Filed 12/13/21  In re A.M. CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re A.M., a Person Coming Under the Juvenile Court Law. | D079109 |
| IMPERIAL COUNTY DEPARTMENT OF SOCIAL SERVICES,<br><br>        Plaintiff and Respondent,<br><br>        v.<br><br>D.M.,<br><br>        Defendant and Appellant. | (Super. Ct. No. JJP000747) |

APPEAL from orders of the Superior Court of Imperial County, William D. Lehman, Judge.  Affirmed.

Jamie A. Moran, under appointment by the Court of Appeal, for Defendant and Appellant.

Kelly Ranasinghe, Office of County Counsel, for Plaintiff and Respondent.

D.M. (Father) appeals from the juvenile court's orders denying his Welfare and Institutions Code[1] section 388 modification petition and terminating parental rights as to his son A.M. (§ 366.26.)[2]  He contends that the juvenile court abused its discretion by denying his petition seeking to change the order terminating his reunification services and setting the matter for hearing under section 366.26.  Father asserts that he showed a sufficient change of circumstances and that the modification request was in A.M.'s best interests.  Because the juvenile court erred in denying his section 388 petition, he argues that the subsequent order terminating his parental rights must be reversed.  We affirm the orders.

FACTUAL AND PROCEDURAL BACKGROUND

In October 2019, after accusing Father of infidelity, Mother yelled at him, threw things, and struck him several times with a floor fan.  Thirteen-month-old A.M. witnessed the entire event and the incident resulted in Mother's arrest.  A social worker from the Imperial County Department of Social Services (the Department) advised Father that A.M. may be placed in protective custody if he is exposed to further violence and Father did not show protective capacities.  After the incident, Father agreed that he and A.M. would live with the paternal grandparents.

During the subsequent investigation, Father admitted having a long and "extensive substance use history" including marijuana, alcohol, and methamphetamine.  He agreed to toxicology screenings for himself and A.M. Both tested positive for methamphetamine and amphetamine.  The social worker considered A.M.'s toxicology screening to be "high."  Father stated

---

[1]    Undesignated statutory references are to the Welfare and Institutions Code.

[2]    L.F. (Mother) is not a party to this appeal.

that he never smoked in the family home, and Mother did not use drugs but claimed that she may have exposed A.M. to drugs when she met with a friend.

The Department lost contact with Father for several months. When a social worker spoke to Father in early January 2020 at Mother's home, he admitted that he had been " 'avoiding' " the Department. Father reported that he and A.M. had been living with Mother since December 2019, and that he last used methamphetamine the day before. The social worker took A.M. into protective custody and explained the foster care process to Father, including that parents have six months to complete services to reunify with their child and the possibilities of long-term placement or adoption if they fail to reunify.

A few days later, the Department filed a petition pursuant to section 300, subdivision (b)(1) alleging that A.M. came within the juvenile court's jurisdiction due to the parents' domestic violence, Father's methamphetamine use, and A.M.'s unexplained positive toxicology results. At the detention hearing, the court appointed counsel for the parents and minor, and made a prima facie finding on the petition.

On January 16 and 30, 2020, Father tested positive for methamphetamine and amphetamine. In February 2020, the juvenile court made a true finding on the allegations in the petition. At the disposition hearing in March 2020, the juvenile court removed A.M., and provided reunification services for the parents. As of September 2020, Father had completed a parenting class but failed to make substantive progress in court-ordered treatment programs including substance use treatment, domestic violence program and anger management. Father also lost contact with the

3

Department, dropped out of services, and did not participate in random drug screenings.

At the contested six-month review hearing in October 2020, Father requested that his reunification services not be terminated because he was going into "rehab hopefully this week." Unpersuaded, the court terminated reunification services to the parents. Father entered a residential drug treatment program on January 26, 2021. At this program, Father completed parenting classes and other addiction and life skills courses.

Father filed a section 388 petition seeking to change the order terminating his reunification services and setting the matter for hearing under section 366.26. In March 2021, the court made a prima facie finding on the petition and set an evidentiary hearing to coincide with the contested section 366.26 hearing. Father completed his residential drug treatment program on March 25, 2021.

The combined section 366.26 and section 388 hearings took place on June 7, 2021, with the court hearing testimony from Father and a Department social worker. The court denied Father's petition concluding that he failed to demonstrate changed circumstances, or that placing A.M. with him would serve A.M.'s best interests. The court terminated the parents' parental rights and selected adoption as A.M.'s permanent plan. Father timely appealed.

DISCUSSION

A. *Legal Principles*

"Section 388 provides an ' "escape mechanism" ' for parents facing termination of their parental rights by allowing the juvenile court to consider a legitimate change in the parent's circumstances after reunification services have been terminated. [Citation.] This procedural mechanism, viewed in the

4

context of the dependency scheme as a whole, provides the parent due process while accommodating the child's right to stability and permanency. [Citation.] After reunification services have been terminated, it is presumed that continued out-of-home care is in the child's best interests. [Citation.] Section 388 allows a parent to rebut that presumption by demonstrating changed circumstances that would warrant modification of a prior court order." (*In re Alayah J.* (2017) 9 Cal.App.5th 469, 478.)

"[A] section 388 petition seeking reinstatement of reunification services or return of the child will necessarily involve a parent who has made mistakes sufficient to support termination of services at some point in the past. The question must be whether the changes the parent made since then are substantial enough to overshadow that prior determination, such that reunification is now in the child's best interests." (*In re J.M.* (2020) 50 Cal.App.5th 833, 848.) "A parent establishes a substantial change of circumstances for purposes of section 388 by showing that, during the period between termination of reunification services and the permanency planning hearing, he or she has resolved the previously unresolved issues supporting juvenile court jurisdiction." (*In re J.M.*, at p. 846.)

At a hearing on a section 388 petition seeking to change a child's placement, the moving party must show a change of circumstances or new evidence and that a change in placement is in the child's best interests. (*In re Stephanie M.* (1994) 7 Cal.4th 295, 317.) A modification petition is addressed to the sound discretion of the juvenile court and its decision will not be disturbed on appeal in the absence of a clear abuse of discretion. (*Id.* at p. 318.) A proper exercise of discretion is " 'not a capricious or arbitrary discretion, but an impartial discretion, guided and controlled in its exercise by fixed legal principles . . . to be exercised in conformity with the spirit of the

law[,] and in a manner to subserve and not to impede or defeat the ends of substantial justice.' " (*In re Robert L.* (1993) 21 Cal.App.4th 1057, 1066.) Exercises of discretion must be " 'grounded in reasoned judgment and guided by legal principles and policies appropriate to the particular matter at issue.' " (*F.T. v. L.J.* (2011) 194 Cal.App.4th 1, 15.)

B. *Analysis*

The juvenile court credited Father for the progress he made but found this progress constituted "changing circumstances rather than changed circumstances." The court acknowledged the bond between Father and A.M. but found that A.M. had a stronger bond with the foster parents, stating " 'I think you love your son, and that's why this is a hard case, just from a human point of view. But I think the law requires this result.' "

Father contends the record shows that the juvenile court abused its discretion when it denied his petition because he demonstrated changed circumstances. He argues that the denial of his section 388 petition will lead to the termination of parental rights and that A.M. will be traumatized by the loss of this relationship.

At the contested hearing, Father testified that he had a 10-year history of methamphetamine use. However, he previously told a social worker that he started using methamphetamine "in his thirties, has used for 'many years,' " and used daily at one point. Given Father's age at the time of the hearing, this gives Father over a 15-year history of methamphetamine abuse assuming he started using at age 35, or a 20-year history if he started at age 30.

As of January 2020, Father reported using methamphetamine two to three times a week. At that time, Father indicated a willingness to do "any services" that the Department recommended, including substance abuse

treatment. The social worker provided Father with a list of inpatient and outpatient services in his area. The social worker also explained the foster care process to Father, that parents have six months to complete services to reunify with their child, and the possibilities of long-term placement or adoption if they fail to reunify. At the section 388 hearing, Father acknowledged that the Department recommended inpatient treatment at the start of the case but that he declined treatment because he believed he could beat his addiction on his own.

Father was not successful in addressing his methamphetamine addiction and, despite knowing about the six-month period to reunify, he waited over 10 months before seeking an evaluation for residential substance abuse treatment. After being denied admittance by one program due to a conflict, Father started a residential treatment program on January 26, 2021, and completed the program on March 25, 2021.

Substance abuse is one of the most serious problems a parent can face and "[t]he provision of a home environment free from the negative effects of substance abuse is a necessary condition for the safety, protection and physical and emotional well-being of the child." (§ 300.2.) Father used methamphetamine the day before he entered his residential treatment program but has not used methamphetamine since that time.[3] Excluding the 60 days Father spent in the highly structured setting of a residential drug treatment program, by the time of the section 388 hearing, Father had only two and one-half months of sobriety. Courts have frequently affirmed the denial of section 388 petitions based on short periods of sobriety (less than a

---

[3] Father's urine tested negative for methamphetamine the day after completing his inpatient program and his body hair tested positive for methamphetamine. The social worker, however, did not know how long drugs stayed in body hair.

year) when a child has been removed at a very young age. (See, e.g., *In re Ernesto R.* (2014) 230 Cal.App.4th 219, 223 [Mother's "recent sobriety reflects 'changing,' not changed, circumstances."]; *In re Clifton B.* (2000) 81 Cal.App.4th 415, 423-424 [seven months of sobriety not enough to reassure the juvenile court that most recent relapse would be the last]; *In re Kimberly F.* (1997) 56 Cal.App.4th 519, 531, fn. 9 ["It is the nature of addiction that one must be 'clean' for a much longer period than 120 days to show real reform."].)

The clinical supervisor at Father's residential drug treatment program remarked that in the "cycle of change," Father was in the "stage of action" and that his "prognosis is good as long as he continues to use the tools acquired during treatment."[4] Given Father's resistance to drug treatment when first recommended by the Department in January 2020, his recent commitment to sobriety is commendable but does not create a changed circumstance considering his lengthy history of substance abuse. At best, his situation was changing, but not yet changed.

Even had Father shown changed circumstances, he did not meet his burden of showing it would be in A.M.'s best interests to be returned to his custody or to have A.M.'s permanent plans delayed by offering family maintenance services. A.M.'s foster parents love him, consider him as part of their family, and want to provide him with stability and permanency through

---

4    The "stages of change" or transtheoretical model "posits that health behavior change involves progress through six stages of change: precontemplation, contemplation, preparation, action, maintenance, and termination." (Prochaska et al., *The Transtheoretical Model of Health Behavior Change*, Sept.-Oct. 1997, Am J Health Promot., Vol. 12, No. 1, p. 38.) "Action is the stage in which people have made specific overt modifications in their life styles within the past 6 months." (*Id.* at p. 39.) "Maintenance is the stage in which people are working to prevent relapse" and this stages "lasts from 6 months to about 5 years." (*Ibid.*)

adoption. A.M. refers to his foster parents as " 'mom' and 'dad.' " A social worker testified at the contested hearing that A.M. enjoyed his visits with Father but separated from Father without crying and did not display the kind of affection to Father that he did with his caregiver. The social worker opined that A.M., who had spent over one-half of his young life away from Father, would suffer emotional trauma if removed from the foster parents and placed with Father.

Based on the evidence presented, the juvenile court could reasonably find that granting Father's section 388 petition would postpone A.M.'s stability and would not be in his best interests compared to the certainty of a permanent home. (*In re Angel B.* (2002) 97 Cal.App.4th 454, 464.)

Accordingly, we conclude that the juvenile court acted well within its discretion by denying Father's section 388 modification petition.

DISPOSITION

The orders denying Father's section 388 petition and terminating his parental rights are affirmed.

HUFFMAN, Acting P. J.

WE CONCUR:

IRION, J.

DATO, J.